```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-CR-406-RM

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

MIQUEL QUINTANILLA-DOMINGUEZ,

     Defendant.
_____

                      REPORTER'S TRANSCRIPT
                         COURT'S RULING
_____
```

Proceedings before the HONORABLE RAYMOND MOORE, Judge, United States District Court for the District of Colorado, occurring at 9 a.m., on the 8th day of February, 2022, in Courtroom A601, United States Courthouse, Denver, Colorado.

**APPEARANCES**

VALERIA SPENCER, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the Government.

JARED WESTBROEK, Assistant Federal Public Defender, 633 17th Street, 10th Floor, Denver, Colorado, 80202, appearing for the Defendant.

TAMMY HOFFSCHILDT, FCRR, CRR, RMR, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

**P R O C E E D I N G S**

COURT'S FINDINGS AND RULING

*THE COURT:* I'm prepared to rule. Frankly, if I had it to do all over again, I probably would have approached this the way that Judge Brimmer did -- Chief Judge Brimmer did, ultimately deciding that the defendant has not met the burden.

Now, I did take the testimony, and in listening to the testimony, I'm open to seeing whether or not that testimony really changes anything that was previously submitted to me, and it really doesn't. It is, essentially, the same testimony with the same strengths and the same weaknesses as are set forth in the affidavit and the other materials. So, where do I come out?

First, I'm not trying to speak to all things immigration and I am not trying to say that all things that the Congress has passed that speaks to or has, as its subject matter, an alien, is subject to rational-basis review, but I do think that setting the terms of who is allowed to enter, what must be done to legally enter the United States is rational basis, and it appears, and it seems to me, that rational basis should also be applied to law that enforced that provision. In other words, if I have the right to say you shall not enter, I should have the right to say on the same standard of review, that there is a consequence for your entry, and I understand that there are two types of consequences; one, civil, which the

1  defendant is not challenging, in terms of this case.  Maybe
2  somebody else is going to challenge it on rational-basis
3  review, later on down the road, but you are not challenging it.
4  I get that.  And the other is criminal, and the statement is
5  that, you know, essentially, if I'm -- if I don't apply
6  Arlington Heights and I apply a rational-basis review, then
7  somehow I'm depriving him of his equal protection rights, and I
8  don't believe that to be the case.
9       Part of equal protection is comparing similarly
10 situated persons, if you would, and deciding whether different
11 outcomes are based on criteria; such as, race or religion or
12 gender, whatever it may be.  I'm not sure that saying
13 immigrants and nonimmigrants should be treated the same with
14 respect to a statute that only applies to one of them, in the
15 first place, really is moving the dial in any meaningful way,
16 for me.
17      I also note that we're not talking about denying
18 someone a due-process right.  What we're talking about is a
19 standard of review, and the fact that something may have a
20 different standard of review, does not mean that somebody is
21 denied of their due-process rights or their equal-protection
22 rights, applicable under the Federal level through the Fifth
23 Amendment due process.
24      I do think that even after this issue is resolved,
25 there remains challenges on an equal-protection bases that can

 1   be raised by this singular individual.  Those challenges are
 2   different than the question of whether or not this facially
 3   neutral statute is to be invalidated, essentially, because he
 4   is being prosecuted.
 5           I think that the right standard is rational --
 6   rational basis, and there's no argument that there's not a
 7   rational basis.
 8           Now, having said that, I recognize that there are
 9   others who disagree with that, including, as I have said, Chief
10   Judge Brimmer, and I understand the argument, and I can see the
11   reasoning.  So, I continue and say, all right, do we have --
12   has the defendant met his burden to show that discriminatory
13   purpose was a motivating factor in 1326, and thereby shift the
14   burden to the government to demonstrate that the law would have
15   been enacted without this factor being in play?  And simply
16   put, the answer is -- my answer is no.  The government --
17   excuse me -- the defendant has not met that burden.
18           There is a lot that has been put before me, but as it
19   pertains to 1326, much of it is ipse dixit, declaration and
20   pleas from, P L E A S, from the defense, to draw an inference.
21   In terms of 1326, do I have much legislative history?  No.  And
22   although Dr. Kang says that she has looked at legislative
23   history, she is putting a label on it that's not legislative
24   history, in terms of what the Court deems it to be.
25           What I have got is matters that pertain to one or two

1    or three Senators and some statements that they made.  I
2    suppose we can consider some statements that the Executive
3    Branch made, as well.  But essentially, in terms of whether or
4    not this statute, as passed, and as basically neutral, had a
5    motivating factor, a discriminatory purpose and attributing
6    that to the Congress, I just don't think it's there.  To the
7    extent that counsel disagrees, I respect his position, but I
8    just don't think it's there.  I mean, building up the racial
9    record with respect to McCarran and one or two more, with
10   nothing that suggests that anyone saw this as racial,
11   racially -- as a matter of racial animus, I'm just not going to
12   presume that, and I understand that I can look at a number of
13   factors, and I am not requiring or setting forth some
14   requirement that, you know, a defendant must have a statement
15   from every member of Congress that says, *I don't like Mexicans*
16   or something to that effect, that's the other ridiculously
17   extreme end of things.
18          I'm not trying to say that there's a particular
19   number, and I am not trying to say that I know what that number
20   is, even if there were a number.  What I am trying to say is
21   there's a minimum degree of proof that's required before I'm
22   prepared to say that racial animus was a motivating factor in a
23   piece of legislation that is facially neutral, and that what I
24   have got doesn't meet or satisfy the burden of establishing
25   that.  It might if we were talking about a smaller body.  It

1    might if we were talking about something other than a historian
2    and speculating as to what every other member of Congress was
3    doing or not doing or thought he or she -- and to be fair, it
4    was predominantly *hes*, back in 1952, may have been exclusively
5    *hes*, whether I have got that right or not is really beside the
6    point.
7         I'm not going to presume that that silence means that
8    they were under the influence of McCarran or that they were
9    persuaded by non-legitimate factors and motivated, to some
10   degree, by racial animus.  There's just -- there's an
11   invitation to do it.  There simply is not evidence to support
12   it, other than what I have been given, a historian telling me
13   what every member of Congress was thinking, and I, frankly,
14   don't accept it.  The fact that you are a historian doesn't
15   mean that you get to say what everyone else was thinking in
16   history from Julius Caesar onward.
17        Look, I know there are a number of factors, the impact
18   of the action and whether it bears more heavily on one race
19   than another?  Does 1326, in the United States, bear more
20   heavily on people of Latinx or Hispanic origin?  Yes.  Is there
21   a geographical aspect to this?  Yes.  Is the inference to be
22   drawn from that fact alone, that there's racial animus?  That's
23   a tough sell.
24        Historical background of the legislation.  There's
25   really not much there.  The specific sequence of events leading

1   the challenged action.  Again, really there's not much there.
2   Congress' departure from normal procedures or substantive
3   process or conclusions.  There's, essentially, nothing there.
4   And the relevant legislative history, there's essentially
5   nothing there.
6           What I'm being asked to do is look at these other
7   statutes, that are not before me, and look at some things that
8   were going on in California, and some things that were going on
9   in Florida, and essentially, from that, say that the burden is
10  satisfied, if you can show that times were racially
11  insensitive, at the minimum, or hostile, at a maximum, that
12  general public perception of issues was X, and therefore
13  congressmen were racially motivated and racially hostile in
14  taking the action to pass a statute.  As I said, if that's what
15  it takes, and that's all that it takes to satisfy Arlington
16  Heights, then, you know, we might as well have Congress
17  recodify every statute passed in the 1950s, in the 1940s,
18  because you can find some racial -- as surely as you have been
19  able to find racial animus towards Hispanics, I guarantee to
20  you, you can find that towards Blacks and women and other
21  minorities.
22          It's just not the case that the times alone, coupled
23  with one or two statements of one or two senators, is enough
24  and I don't think that anything here satisfies or is sufficient
25  to toss the burden to the government, to then come forward with

1  some kind of evidence to establish that the statute would have
2  been passed without the racial animus; however that's supposed
3  to be done, is a little less than clear to me, but presumably
4  we would be hearing from other historians or someone along
5  those lines.
6  　　　　　At the end of the day, although I do see things
7  somewhat differently than the Chief Judge, and I am not
8  deferring to him, I think at the end of the day, where he and I
9  do agree, is that what is before me is insufficient and of
10 limited relevance in deciding the constitutionality of the
11 statute that this individual is charged with violating, and I
12 am not here it try and say what is sufficient or say that you
13 must produce X or Y or Z.  I'm saying simply that what has been
14 provided is not enough to invalidate a facially neutral statute
15 that was passed by Congress, and has been, frankly, in the law
16 for some changes and amendments and modifications, for decades,
17 and that all of that should be overturned on the basis of the
18 skimpy and the evidence that's before me and the invitation to
19 draw inferences from it.
20 　　　　　What's most difficult is this suggestion that silence
21 equals racism.  Speaking equals racism.  Silence equals racism.
22 It is an interesting question.  One that I don't need to
23 decide, as to what it is that Congress is required to do, with
24 respect to old legislation, when it is recodified.
25 　　　　　I could go on, but I won't.  The evidence is not

1   sufficient.  The motion is denied.

2          All right.  I have vacated the trial date.  I also
3   vacate the trial-preparation conference for this Friday, in
4   case I did not say that, explicitly, and I now am saying it
5   explicitly.  And again, email Ms. Bader tomorrow, and we will
6   get a date.

7          I'm not suggesting what you will or will not do in the
8   interim.  If he wants to go to trial, fine, if he wants to
9   plead, that's fine.  I'm not trying to influence that.  You two
10  can talk.  I will tell you that, because you're from another
11  District, I don't mean anything negative by that, if the
12  question is, do I take -- and I have heard the term -- naked
13  pleas, or there are other terms for it, the answer to that,
14  yes, as well.  And again, I'm not trying to suggest that you do
15  any particular thing.  I'm just saying, we're going to get a
16  trial date, and if we're going to trial, fine.  I suppose I am
17  suggesting if the only reason we're going to trial is to
18  preserve the right to appeal this, you make your own judgments,
19  but there's other ways to skin that cat.

20         *MR. WESTBROEK:*  Yes, sir.

21         *THE COURT:*  I don't have anything more that I want to
22  say.

23         *MS. SPENCER:*  No, thank you.

24         *MR. WESTBROEK:*  I object to the Court's ruling, so the
25  record is clear.

1  *THE COURT:*  Understood.  Understood.  And it's for all
2  of the reasons that we have been discussing over the course of
3  the morning, nonetheless, you have your record.  We will be in
4  recess.
5  *THE COURTROOM DEPUTY:*  All rise.  Court is in recess.
6  (Recess at 12:24 p.m.)
7  REPORTER'S CERTIFICATE
8
9  I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
10
11  Dated at Denver, Colorado, this 14th day of March, 2022.
12  s/Tammy Hoffschildt
13  _____
    Tammy Hoffschildt, FCRR,RMR,CRR
14
15
16
17
18
19
20
21
22
23
24
25