IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 22-cr-00018-RMR

UNITED STATES OF AMERICA,

       Plaintiff,

v.

OSCAR DURON-DE LUNA,

       Defendant.

---

## DEFENDANT'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE PURSUANT TO 18 U.S.C. § 3162(a)(2)

---

Defendant Oscar Duron-De Luna, through undersigned counsel, respectfully requests that this Court dismiss the pending Indictment, with prejudice, due to a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161(c)(1), 3162(a)(2).  In support thereof, Mr. Duron-De Luna would show as follows:

### I.      Factual Background:

On December 7, 2021, Mr. Duron-De Luna was arrested on a warrant issued subsequent to the filing of a Petition for Warrant on Person Under Supervision in 17-CR-00202-PAB.  The petition, in part, was based on the allegation that Mr. Duron-De Luna violated the terms of his supervision by re-entering the United States without permission.  If found to have violated the terms of his supervision, Mr. Duron-De Luna is facing up to a maximum of two years in federal prison, followed by his deportation back to Mexico.

On February 11, 2022, two months after being arrested by the federal government, a new Indictment was filed with this Court alleging a violation of 8 U.S.C. §§ 1326(a), (b)(1).  The new Indictment is based on the same facts and circumstances alleged in the Petition filed in 17-CR-00202-PAB.  If convicted pursuant to the new Indictment filed in this case, § 7B1.3(f) instructs Judge Brimmer to run any sentence imposed upon revocation in 17-CR-00202-PAB consecutive to any sentence imposed in this case, despite the fact that both sentences would be based on the same conduct; specifically, Mr. Duron-De Luna illegally reentering the United States.

Due to the pending Indictment in this case, Mr. Duron-De Luna's pending revocation has been stalled for approximately ten months.

## II.    The Speedy Trial Act Requirements:

"The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993) (quoting *United States v. Noone*, 913 F.2d 20, 28 (1st Cir. 1990)). The Speedy Trial Act reads in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1).

The Speedy Trial Act provides that certain periods of delay are not included in computing the time limits for trial.  One category of exclusion under the Speedy Trial Act is particularly relevant in this case: delays attributable to pretrial motions.

18 U.S.C. § 3161(h)(1)(D) provides for the exclusion of periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Additionally, § 3161(h)(1)(H) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."

The Tenth Circuit has "explained that these subsections work in concert such that 'if a motion is one that does not require a hearing, the Act excludes time through the period of its prompt disposition, but only if that period does not exceed thirty days from the date the motion is taken under advisement.'" *United States v. Margheim*, 770 F.3d 1312, 1318 (10th Cir. 2014) (quoting *United States v. Williams*, 511 F.3d 1044, 1048 (10th Cir. 2007)). In other words, "[i]f under advisement, the maximum excludable delay for the court's determination is 30 days." *Id*. at 1322 (quoting *United States v. Willie*, 941 F.2d 1384, 1387 (10th Cir. 1991) (emphasis in original)).

In *Henderson v. United States*, 476 U.S. 321, 331 (1986), the Supreme Court instructed that "[t]he provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion." The Supreme Court defined "under advisement" to begin at "the time the court receives all the papers it reasonably expects." *Id*. at 329. In *Margheim*, the Tenth Circuit stated that it has interpreted *Henderson*'s holding to mean that if the district court seeks "more information upon which to make its ruling" on a motion, the advisement period does not begin "[u]ntil the court obtains that information." *Margheim*, 770 F.3d at 1322 (quoting *Willie*, 941 F.2d at 1388 n.2).

### III.    Speedy Trial Act Violation:

Pursuant to 18 U.S.C. § 3161(c)(1), Mr. Duron-De Luna's trial must commence within 70 days from the date that he initially appeared before a judicial officer of the court in which the charge is pending.  For Mr. Duron-De Luna, this was his Initial Appearance on February 11, 2022.  This would have placed Mr. Duron-De Luna's original 70-day date on April 25, 2022.  However, subsequent to Mr. Duron-De Luna's Initial Appearance, several periods of delay occurred, excludable under 18 U.S.C. § 3161(h), which pushed back the date on which Mr. Duron-De Luna's trial must commence:

1.      On April 22, 2022, undersigned counsel filed a Notice of Disposition with the Court.  Pursuant to 18 U.S.C. § 3161(h)(1)(G), the filing of the Notice of Disposition tolled the Speedy Trial Clock.

2.      On June 13, 2022, the Court allowed Mr. Duron-De Luna to withdraw his Notice of Disposition.  Accordingly, pursuant to Federal Rule of Criminal Procedure 45(a)(1)(A), which instructs to exclude the day of the event that triggers the period, the Speedy Trial Clock was set to begin anew on June 14, 2022.

3.      On June 14, 2022, undersigned counsel filed a pretrial motion requesting the Court's leave to exceed the Court's page limitations pertaining to pretrial motions.  Pursuant to 18 U.S.C. § 3161(h)(1)(D), this again tolled the Speedy Trial Clock.

4.      On June 15, 2022, undersigned counsel filed an additional pretrial motion with the Court, seeking the dismissal of the pending Indictment.  Pursuant to 18 U.S.C. § 3161(1)(h)(D), this pretrial motion further tolled the Speedy Trial Clock.

5.      Subsequently, the Government filed its Response to the Motion to Dismiss the Indictment on June 27, 2022.  Then, on July 1, 2022, undersigned counsel filed a Reply to the Government's Response.   The entirety of this time was excludable under 18 U.S.C. § 3161(h)(1)(D).

6.      On July 26, 2022, the Court issued an Order requesting supplemental briefing and also scheduled an Evidentiary Hearing for August 24, 2022.  Pursuant to 18 U.S.C. § 3161(h)(1)(D), this time was excludable as well.  "Delay resulting from the filing of a pretrial motion, from the filing of the motion through the conclusion of the hearing on…"

7.      On August 5, 2022, the Government filed its Supplemental Brief.

8.      On August 12, 2022, undersigned counsel filed his Supplemental Brief.

9.      On August 16, 2022, the Court vacated the Evidentiary Hearing and took the Defendant's Motion to Dismiss the Indictment under advisement.  Accordingly, pursuant to 18 U.S.C. § 3161(h)(1)(H), "delay attributable to any period, *not to exceed thirty days*, during which any proceeding concerning the defendant is actually under advisement by the court," may be excluded when computing the time within which the trial must commence.

10.     Excluding 30 days from August 17, 2022, the Speedy Trial Clock began running again on September 17, 2022.  **With only four days remaining, this means that the Speedy Trial Clock ran out on September 20, 2022.**

**IV.    Remedy:**

"When a defendant demonstrates a violation of the Act, the proper remedy is dismissal of the indictment." *Margheim*, 770 F.3d at 1318. "[T]he district court retains broad discretion whether to dismiss the indictment with or without prejudice." Id. (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006)). "In determining

whether to dismiss the case with or without prejudice," the Speedy Trial Act requires the Court to "consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).

### 1.    Illegal Reentry is not a serious offense:

Illegally reentering the United States is a non-violent status offense. The criminal offense is akin to overstaying one's visa. The latter, however, is not deemed a criminal offense in the United States. And despite being a federal felony offense punishable, in this case, by up to 120 months, the average sentence imposed for a violation of 18 U.S.C. § 1326 belies any argument by the government that, based on the statutory range alone, illegally reentering the country should be seen as a serious offense.

A study commissioned by the Sentencing Commission in 2015, prior to the major revisions made to the Illegal Reentry guideline, § 2L1.2, found that out of 18,498 illegal reentry offenders, the average sentence was 18 months.[1] Of these 18,498 illegal reentry cases, 40% of the defendants (approximately 7,400) had serious criminal histories sufficient to trigger the statutory maximum sentence of 20 years under § 1326(b)(2). Yet, despite being eligible for up to 20 years in prison, only two out of the 7,400 defendants were actually sentenced above 10 years. This means the worst of the worst, capable of receiving two decades in prison for being in the United States without permission, received at or below the 10-year maximum sentence under § 1326(b)(1).

---

[1] https://www.ussc.gov/research/research-publications/illegal-reentry-offenses

As it pertains to Mr. Duron-De Luna, in 2014, a year prior to the Commission's study of sentencing practices under § 2L1.2, despite facing an indictment alleging a maximum sentence of 120 months, his ultimate sentence for illegally reentering the country was 6 months in federal prison.[2]  Three years later, Mr. Duron-De Luna faced an additional prosecution for illegal reentry.  Again, despite a maximum sentence of 120 months being available to the court, Mr. Duron-De Luna was sentenced to 12 months, a sentence twice as severe as the sentence he received in 2014, but far removed from the statutory maximum of 120 months.[3]

In 2016, the Commission completely overhauled the guideline provision applicable to illegal reentry offenses, § 2L1.2.  A large part of the motivation for revising the guideline was to make it less severe.[4]  The 2015 study, along with testimony from both bench and bar, showed that the former version of the guidelines, which carried 12- and 16-level specific offense characteristic enhancements, resulted in overly harsh sentencing recommendations.[5]  In fact, in fiscal year 2015 alone, only 29.7% of defendant's who received a 16-level enhancement were sentenced within the applicable guidelines. Meaning 71.1% received a downward variance at sentencing.  And, during the same fiscal year, only 32.4% of defendants who received a 12-level enhancement were sentenced

---

[2] 14-CR-00291-PAB.

[3] 17-CR-00202-PAB.

[4] https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160428_RF.pdf

[5] Prior to November 1, 2016, a defendant with a criminal history of VI, who received the harshest sentencing enhancement, 16-levels, faced a recommended sentence of 77 to 96 months. Defendants with a similar criminal history who received the 12-level enhancement, faced sentencing recommendations of 57 to 71 months.

within the guidelines.  Meaning, roughly 67% of the defendants received a downward variance at sentencing.

Given the Commission's attempt to lessen the severity of illegal reentry sentences, along with the extremely low-average sentence received for a conviction under 8 U.S.C. § 1326, coupled with the fact that the offense itself is a non-violent status offense, this Court should find that it is not a serious offense for purposes of determining whether the Indictment should be dismissed with prejudice pursuant to 18 U.S.C. § 3162(a)(2).

In *United States v. Flores-Escobar*, 2021 WL 3022987 (S.D. Ohio, Jan. 16, 2021), Chief Judge Marbley noted that "[s]ister courts within the Sixth Circuit have held that illegal re-entry is not a serious offense because the charge carries no mandatory minimum sentence, and the maximum penalty is only two years, absent aggravating factors." *Id*. at *4 (citing *United States v. Pascual*, No. 1:19-cr-44, 2019 U.S. Dist. LEXIS 125498, at *4, 2019 WL 3414390 (E.D. Tenn. July 29, 2019); *United States v. Franco-Bonilla*, No. 3:05-00101, 2005 U.S. Dist. LEXIS 31308, at *10 (M.D. Tenn. Nov. 16, 2005)).

However, unlike the defendants in *Pascual* and *Franco-Bonilla*, Mr. Flores-Escobar, similar to Mr. Duron-De Luna, faced an aggravated penalty based on a prior felony conviction.  Despite this factual distinction, Chief Judge Marbley found that while "[a] prior conviction for an aggravated felony increases the potential penalty for a conviction of illegal-reentry…an immigrant convicted of an aggravated felony still has no mandatory minimum prison sentence." *Id*.  This, along with the fact that illegal reentry is not a violent crime, coupled with the fact that Mr. Flores-Escobar had no additional criminal convictions since his prior conviction a decade earlier, led Chief Judge Marbley

to find that illegal reentry was not a serious offense and, after weighing the remaining factors, dismissed the indictment with prejudice.

Taking a slightly different approach, but reaching the same conclusion, District Judge Vukasin used the Parole Commission's offense grading system as a guide to determine whether immigration-related offenses should be treated as serious offenses when determining whether to dismiss an indictment with or without prejudice for a Speedy Trial Act violation. In *United States v. Osunde*, 638 F.Supp. 171, 175 (N.D. Cal. 1986), Judge Vukasin held that, "in determining whether an offense is serious for purposes of dismissal with prejudice, the Court may consider the United States Parole Commission's grading of the offenses." *Id*. On a scale of one to eight, Judge Vukasin found that the Parole Commission classifies the offense involving immigration, naturalization, and passports, at a level two. *Id*. The low-level grading by the Parole Commission, along with the relatively minor violations the defendant was facing, offenses that did not involve physical violence or monetary loss, led Judge Vukasin to find that they were non-serious, which weighed towards dismissal with prejudice. *Id*.

The offenses that the defendant faced in *Osunde*, which were deemed to be non-serious, were falsely representing oneself as a United State citizen and falsifying a material fact on a passport application. *Id*. at 173. These immigration-related offenses were classified as level two offenses under the Parole Commission's grading system. Mr. Duron-De Luna, on the other hand, is charged with illegal reentry, which is classified as an offense category I, the lowest level of categorization for federal offenses. *See* 28 C.F.R. § 2.20, Chapter Four.

Succinctly put, a violation of 8 U.S.C. § 1326(a), (b)(1) or (b)(2) does not involve physical violence or loss to any aggrieved party.  It is a status offense for which, as of fiscal year 2020, receives on average a sentence of 8 months.[6]  This offense, compared with other federal offenses, is a non-serious offense that weighs in favor of this Court finding that the pending motion should be dismissed with prejudice.

2.      *The Facts and Circumstances of the Case that Led to the Dismissal*

Mr. Duron-De Luna's Motion to Dismiss the Indictment was under advisement for a period of 48 days, which is 18 days in excess of the 30 days allowed pursuant to 18 U.S.C. § 3161(h)(1)(H).  However, "responsibility for enforcement of the Speedy Trial Act is not the exclusive burden of the District Court." *United States v. Osunde,* 638 F.Supp. at 175 (citing *United States v. Perez-Reveles*, 715 F.2d 1348, 1353 (9th Cir. 1983).   The government shares in this obligation.  *Id*.  And while undersigned counsel is unaware of any evidence of affirmative misconduct in the delay, even negligence on behalf of the government to ensure a prompt and speedy disposition of the criminal charge can weigh in favor of dismissing the charges with prejudice.  *See United States v. Flores-Escobar*, 2021 WL 3022987 at *4.

3.      *Impact of Reprosecution on the Administration of the Speedy Trial Act.*

Dismissal without prejudice is a toothless remedy for violating Mr. Duron-De Luna's and the public's right to swift prosecution.  In fact, "dismissal without prejudice can be viewed as frustrating the Act's mandate of swift prosecution." *United States v. Vasquez-Escobar*, 30 F.Supp.2d at 1369.  Mr. Duron-De Luna was arrested almost one year ago and

---

[6] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Illegal_Reentry_FY20.pdf

has been in custody ever since awaiting the prompt disposition of both his pending revocation and this pending Indictment.  If the Court were to dismiss his case without prejudice, the 70-day clock would reset upon the government's refiling of either a Criminal Complaint and/or Indictment, meaning Mr. Duron-De Luna will be in custody for an even lengthier period of time awaiting the disposition of this charge, his revocation, and then, ultimately, his deportation.  This seems at odds with the Speedy Trial Act's emphasis on swift prosecutions.  As such, this factor should weigh in favor of dismissal with prejudice.

4.      *Impact of Reprosecution on the Administration of Justice*

Dismissal with prejudice will not impede the administration of justice.  "If the defendant was convicted following re-indictment, he would be subject to deportation following any custodial sentence the Court might impose." *United States v. Osunde*, 638 F.Supp. at 175.  "If the defendant was to be acquitted, he would still be subject to deportation." *Id*.  "In short, the result will be the same; deportation is inevitable." *Id*. at 176.  "Accordingly, dismissal with prejudice is the most expedient avenue by which to achieve the inevitable." *Id*.  "The interests of justice would be served by such a dismissal, because, although he may have committed the charged crimes, the defendant will not be allowed to continue enjoying the benefits of, and the protections concurrent with, residence in the United States."

A similar conclusion was reached by the court in *Vasquez-Escobar*.  There, the government argued that reindictment would serve the public interest by deterring him and others from illegally reentering this county in the future.  *United States v. Vasquez-Escobar,* 30 F.Supp. at 1368.  Countering, the court noted that Mr. Vasquez-Escobar would still be deported regardless of whether the indictment is dismissed with or without

prejudice, "justice will be served to the extent that he will not be allowed to continue enjoying the benefits of, and the protections concurrent with, residence in the United States." *Id*. at 1369.

Again, the same conclusion was reached in *United States v. Pena*, 73 F.Supp.2d 56, 61 (D. Mass. 1999). There, the court found no evidence suggesting that dismissing the case with prejudice will allow a criminal dangerous to the community or country go free. *Id*. In addition, the court noted that the defendant would be promptly deported and, as such, he would not be a threat to commit crimes in the United States in the near future. *Id*.

Here, there is no doubt that Mr. Duron-De Luna will be deported if this Court dismisses the pending indictment with prejudice. However, unlike the defendants above, Mr. Duron-De Luna still awaits revocation in 17-CR-00202-PAB for violating his term of federal supervision by, *inter alia*, reentering the United States without permission. So even if this Court dismisses the Indictment with prejudice, Mr. Duron-De Luna will still face up to 2 years in federal prison for returning illegally. Justice will still be served. As such, this factor should weigh in favor of dismissing the pending Indictment with prejudice.

> 5. *Mr. Duron-De Luna has been Prejudiced by the Delay*

"Prejudice to the defendant is among the 'other' factors the text of § 3162 directs the district court to consider." *Abdush-Shakur*, 465 F.3d at 462 (citing *United States v. Taylor*, 487 U.S. 326, 334 (1988)). Here, Mr. Duron-De Luna has actually been prejudiced by the delay in his prosecution because "he has been detained for the duration of the proceedings. The delay, therefore, has caused him a loss of liberty." *United States v. Flores-Escobar*, 2021 WL 3022987 at *4. This alone is sufficient prejudice to support dismissal with prejudice.

In addition to his continued loss of liberty, Mr. Duron-De Luna has suffered prejudice in his personal life as well. While detained throughout the pendency of this case, authorities in Jefferson County, Colorado, have sought to take custody of his children from their mother.[7] While Mr. Duron-De Luna is doing what he can to help his kids from behind bars, this assistance is very limited. Without being free from custody to assume responsibility for his children, they are at risk of being removed from their home and placed in foster care.

Mr. Duron-De Luna's continued loss of liberty and the threatened loss of his children weigh in favor of this Court dismissing the pending indictment with prejudice. In so doing, Mr. Duron-De Luna will not be immediately released or deported. First, Mr. Duron-De Luna will have to serve whatever custodial sentence Chief Judge Brimmer hands down in 17-CR-00202-PAB. Then, Mr. Duron-De Luna will be deported to Mexico. Hopefully, once in Mexico, Mr. Duron-De Luna can assist his family with the struggles they are currently facing.

## V.    Conclusion:

Mr. Duron-De Luna was not brought to trial within the time limit required by 18 U.S.C. § 3161(c) as extended by 18 U.S.C. § 3161(h). Accordingly, pursuant to 18 U.S.C. § 3162(a)(2), this Court must dismiss the Indictment. By so doing, this Court has the discretion to dismiss with prejudice. Mr. Duron-De Luna asks that this Court do just that. The pending charge is not a serious offense. It is a non-violent status offense where no physical or economic harm has occurred. And while the facts and circumstances

---

[7] Mr. Duron-De Luna provided undersigned counsel with case #22-JV-30152. Due to the involvement of juveniles, undesigned counsel has not been able to find the case online or access any of the documents involved.

leading to dismissal might not militate towards dismissal with prejudice, the remaining factors do.  Dismissing without prejudice would frustrate the core focus of the Speedy Trial Act: swift prosecution.  Furthermore, justice will be served through the pending revocation in 17-CR-00202-PAB and the certain deportation of Mr. Duron-De Luna from the United States.  Furthermore, Mr. Duron-De Luna has suffered actual prejudice due to the delay.  Mr. Duron-De Luna has lost his liberty and may soon lose his children.  Overall, the § 3162(a)(2) factors weigh in favor of dismissing the pending Indictment with prejudice.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


*/s/ Matthew K. Belcher*
MATTHEW K. BELCHER
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Matthew_Belcher@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on October 18, 2022, I electronically filed the foregoing ***Defendant's Motion to Dismiss Indictment with Prejudice Pursuant to 18 U.S.C. § 3162(A)(2)*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

Albert C. Buchman, Assistant U.S. Attorney
Email:  al.buchman@usdoj.gov

and I will serve the document or paper to the following non-CM/ECF participant in the manner indicated:

Oscar Duron-De Luna (via mail)

/s/ Matthew K. Belcher
MATTHEW K. BELCHER
Assistant Federal Public Defender
Office of the Federal Public Defender